McIlvaine, J.
By the homestead act of March 23,1850,. the family homestead of each head of a family was exempted from sale on execution; provided, the value of the-homestead did not exceed $500. And when the homestead exceeded $500 and was not divisible, its exemption from-sale was made dependent upon the payment to the creditor of the annual rental value of the property in excess of $40. The exemption Is allowed on the application of the debtor or his wife, his agent or attorney. There were some exceptions, however, to the right to. this exemption, as for instance, when the debt was contracted before the act took effect, and as against a mortgage executed by the debtor and his wife, etc. But the general creditors of ’Nelly, are not shown by this record to be within any of the exceptions.
It is contended, however, that at the time of the sale, the property sold was not the family homestead of the debtor,. Nelly, and his family. That the property was not occupied as such, at the time, is true; for the reason, however, that the house had recently beeu destroyed by-fire.
But the simple fact that the property was not in the actual occupancy of the family did not affect its character as-a homestead. Although, in a general sense, the homestead of a family is the place where they actually reside;’ yet it is settled by numerous decided cases, that the temporary absence of the family, though voluntary, does not affect the character of the property as a homestead;'and, for stronger reasons, an involuntary absence would not do so.
*444 The chief contention, however, is that the removal of the ■family from the premises, after the fire, and the absence of any purpose on the part of the debtor to rebuild or construct a dwelling-house on the premises, shows an abandonment of the homestead.
It seems to be conceded, that, if the debtor had intended to rebuild within a reasonable time, the right to hold the property exempt from execution could not be denied, notwithstanding the destruction of the house by fire and the consequent enforced absence of the family. If this be so, and we think it is, the question arises, what effect should be given, under the circumstances of this case, to the intention of the debtor not to rebuild ? The property, while it remained in the actual possession of the family of the debtor .as a homestead, had been decreed to be sold for the payment of debts, as against which, the right of exemption ■could not be asserted; but as against the claims of the general creditors of the debtor, either he or his wife, had a clear right to demand the exemption. And it is quite certain, that as against the general creditors, the debtor did not intend to abandon his right to any exemption to which, under the law, he was entitled. 'This is shown by his reserving the right in the deed of assignment, and also, in the decree for the sale of the property. And when it is considered, that shortly before the fire, he had transferred all his property, personal and real, save only such exemptions as were allowed by law, which included the homestead, the ■sale of which under the decree was then inevitable, there can be no reasonable inference that he intended to abandon the homestead, from the mere fact, that under the circumstances, he did not design to rebuild the house. So that, as between Kelly and his wife on the one side, and the general creditors on the other, the right of the former to demand a homestead, or a portion of the proceeds in lieu thereof, was exactly the same that it would have been, if the house had not been destroyed, and the debtor and his family had not left the premises previous to the sale.
On this view of the case, it is further claimed in support *445 of the judgment of the district court, that, the homestead, having been sold under the decree to satisfy claims against which its exemption could not be demanded, there is no-authority, under the statute, to award a portion of the proceeds to the debtor or his wife, in lieu of the homestead, a‘s-against the claim of any creditor.
■ On the other side it is claimed that under the 4th section of the act of April 9, 1869 (66 Ohio L. 50), such authority is expressly given. The section reads as follows :
“When a homestead shall be charged with liens, some-of which, as against them, precludes the allowance of a. homestead to either the head of the family or the wife, and others of such liens do not preclude the allowance of such homestead, and a sale of such homestead is had, then of the proceeds of such sale, after the payment of the liens so-precluding the allowance of such homestead, the balance,, not exceeding five hundred dollars, shall be awarded to the head of the family, or the wife, as the case may be, upon the application of either of them in person, or by agent or attorney, in lieu of such homestead.”
This section, we think, can not apply to this ease. It-was passed after the debts due to the general creditors had been contracted. Without inquiry as to the power of the-legislature to apply.such enactments to pre-existing debts,, we are satisfied that it was not the intention of the legislature to give this statute such operation. The first section, of the act, which enlarges the homestead from a valuation of $500 to $1,000, exempts it from sale, in express terms, as against subsequent debts only; and such has been the uniform policy of our legislation on this subject. And again, a lion upon homestead property is preserved to the creditor, until the property ceases to be a homestead, when it becomes subject to sale. Therefore, while section 4 compensates for the loss of a homestead of the value of $1,000; held under this act, by an allowance, out of its proceeds, of $500 only, it would seem to be unreasonable to hold that the intention was to allow absolutely the -full value of the-homestead exempted under the former act. And further,. *446 the uniform policy of legislation on this subject has been to make the absolute exemption in lieu of a homestead of ■less value than the homestead itself where a temporary use ■only is preserved to the debtor and his family.
' This brings us back to the question, ‘What-, under the original act of 1850, was the right of a debtor, or his family, in the surplus of the proceeds of a homestead sold under a claim which precluded the exemption, as against creditors whose claims were inferior to the right of homestead?
The statute did not in terms provide for such a case; .and yet, it may be safely affirmed that it was the intention •of the statute to make provision for the families of such debtors beyond the exemptions otherwise allowed by law. If the debtor were the head of a family and not the owner ■of a homestead, an additional exemption to the value of .$300 was allowed; and, if the owner of a homestead, it was exempted from sale so long as it remained the family homestead; so that additional exemptions were allowed for -every debtor who was the head of a family. True, the homestead was not exempted as against certain classes of ■ creditors; but these exceptions were not intended for the benefit of creditors who did not belong to the preferred • classes. Hence, when a preferred creditor asserted his lien against the homestead in a court of equity, so much only ■ of the homestead, if capable of division, should be sold as would satisfy the preferred claim; and, if not capable of division without injury, a sale, subject to the right of homestead might be made, if the preferred claim would thereby be satisfied. That preferred claims could thus be satisfied from the homestead of the debtor without injury to the non-preferred creditors admits of no doubt; and therefore, we think it follows that if the whole of the homestead property be sold, any surplus remaining should be regarded, .as between the debtor and non-preferred creditors, as representing the homestead, and should be invested accordingly for the benefit of the parties, or divided between them .according to their respective rights.
And in case the latter method, which we think as a gen *447 ■eral rule should be preferred, is adopted, the rights of the. parties to the fund should be determined in analogy to other provisions of the statute. Section 8 of the act, as amended March 22,1858, and in force at the time the rights of these parties accrued, fixed the absolute allowance in lieu of a homestead to a debtor who was not the owner of a homestead at $300 in personal property, to be selected by him. A case quite analogous to the one at bar. We therefore think that, on the application of Mrs. Kelly, the court of common pleas, out of the surplus proceeds of the homestead, after payment of preferred debts, should have allowed to her the sum of $300, and adjudged the balance to the assignee, to be by him administered for the benefit of the general creditors.
When the case was brought into the district court, on error, the record contained an agreed statement of facts, from which it appeared that Mrs. Kelly was entitled to an allowance of $300, instead of $500, as allowed by the court of common pleas, thus presenting a proper case for a modification of the order below, instead of a general reversal. Therefore Ave think the judgment of the district court ■should be reversed, and the order entered here which should have been made below.
Okey, J., having been of counsel, did not sit in this case.